Filed 5/15/23  P. v. Flores CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E079392 |
| v. | (Super.Ct.No. CR18960) |
| CARLOS EUGENE FLORES, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  John D. Molloy, Judge. Reversed and remanded with directions.

Jeanine G. Strong, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, and A. Natasha Cortina, Lynne G. McGinnis, and Alan L. Amann, Deputy Attorneys General, for Plaintiff and Respondent.

1

Defendant and appellant, Carlos Eugene Flores, filed a petition for resentencing pursuant to Penal Code former section 1170.95,[1] which the superior court denied after holding an evidentiary hearing at which defendant was not present.  On appeal, defendant contends the court prejudicially erred in denying his petition without taking a waiver of his presence at the hearing.  We reverse and remand the matter with directions.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

According to the testimony presented at a joint preliminary hearing as to both defendant and his brother, around 50 to 75 young adults gathered in a parking lot on July 13, 1981, for a party.  Defendant and his brother were present; defendant got into a fight.

Defendant, with this brother in the car, later jumped their vehicle up onto the grass and began to peel out.  A number of the partygoers were angered at the brothers' behavior and started yelling at them.  One of them took the keys from the vehicle; defendant started hitting him; defendant kicked someone in the mouth; ten people eventually began beating on defendant.  The brothers eventually took off in their vehicle.

At some point, the brothers returned.  Defendant's brother had a rifle with which he began shooting people.  Defendant's brother said, " 'I am going to kill all of you[ ] mother-fuckers.' "  Four people were shot.  Three died of gunshot wounds.

---

[1]  All further statutory references are to the Penal Code.  Effective June 30, 2022, Assembly Bill No. 200 (2021-2022 Reg. Sess.) amended and renumbered section 1170.95 as section 1172.6.  (Stats. 2022, ch. 58, § 10.)

2

Defendant later spoke to someone whom he informed the brothers "had gotten into some trouble; that they had got a gun and had possibly shot some individuals . . . ." Defendant "advised me that they had been beat up and had gone looking for help. They couldn't get any, so they got a gun, came back, and [defendant's brother] [ ] shot some people."

After an officer arrested defendant, defendant told him "[t]hat he had been involved in an altercation with his brother, and that they were beat up by individuals there, both he and his brother." They then left in their car. Defendant said they had obtained a gun and returned to the parking lot " 'to shoot.' "

During a second interview, defendant said he was mad and angry after having been beaten up in the parking lot. "[A]fter leaving the parking lot after the fight they attempted to get some help to be on their side. They were going to come back. For whatever reason they were unable to get any help. They then went and obtained a rifle." "They each wanted to do the shooting. And having only one weapon that posed a problem. They argued about who was going to do the shooting with [defendant's brother] winning out."

They parked across the street from the parking lot so that they could leave immediately after the shooting. Defendant waited in the car while his brother executed the shooting. When his brother returned to the car, defendant drove the car away in a hurry.

On December 9, 1982, a jury found defendant guilty of three counts of first degree murder (§ 187, counts 1-3) and one count of attempted murder (§§ 664/187, count 4). On April 12, 1983, the court sentenced defendant to an aggregate term of imprisonment of 25 years to life.[2]

On January 3, 2019, defendant filed a former section 1170.95 petition for resentencing in which he alleged he was convicted pursuant to the felony-murder rule, was not the actual killer, and could not be convicted of murder today. On March 28, 2019, the People filed a response in which they argued, in part, that defendant had failed to demonstrate a prima facie showing. They contended that although he was not the actual killer, he aided and abetted the killings with the intent to kill. On July 24, 2019, defense counsel filed a reply brief, maintaining that defendant had made a prima facie showing of relief; thus, the court was required to hold an evidentiary hearing to determine whether defendant was a major participant who acted with reckless indifference to human life.

On November 6, 2020, defense counsel filed a second former section 1170.95 petition. The court set the matter for a conference hearing. On November 19, 2021, the court issued an order to show cause why defendant should not be resentenced.

On March 21, 2022, the People filed an opposition brief. The People requested the court take judicial notice of the preliminary hearing transcript as they were unable to

---

[2] Defendant did not appeal his conviction. A jury convicted defendant's brother of three counts of murder and one count of attempted murder. Defendant's brother appealed. This court affirmed the judgment but reversed the matter for resentencing on the attempted murder count. (*People v. Flores* (Oct. 10, 1984, E000065) [nonpub. opn.].)

locate the trial transcript. In reliance on the preliminary hearing transcript, the People argued defendant conspired to commit willful, deliberate, premediated murder, and acted with express malice; therefore, he was ineligible for the relief requested.

On April 12, 2022, defense counsel filed points and authorities in support of defendant's petition for resentencing. Defense counsel contended "much of the evidence sought to be admitted by the People is inadmissible hearsay and defense objects to any such hearsay to be admitted or otherwise considered in this hearing." Defense counsel maintained that the People could not bear their burden of proving beyond a reasonable doubt that defendant could be convicted of murder under current law.

Defendant was not present at the evidentiary hearing on June 17, 2022. The court noted, "I read both of your briefs, including the portions that were most germane to me because there's not a lot of dispute about a number of facts as it relates to the case, but portions of the preliminary hearing transcript, specifically portions where the investigator attributed comments to [defendant] at specifically two different interviews." Both defense counsel and the People submitted on their briefs.

The court found, "Given the briefs and given the transcripts that are provided, . . . the People have proved beyond a reasonable doubt that the defendant . . . is guilty of murder, using theories that are available after the changes made pursuant to Senate Bill 1437. Specifically, there is tremendous evidence of a specific intent to kill."

The court found that after being pulled from a fight, defendant and his brother "obtained a firearm." "They discussed going back to where the folks were. There was a

discussion in the car about who was going to get out and do the shooting, and they argued because they only had one firearm. And in . . . [defendant's] own comments, his brother . . . won the argument in that he would be the driver that went back to the scene. [Defendant's brother] got out of the car, fired into a crowd of people, and killed ultimately three of them." "There is ample evidence of aiding and abetting a homicide. There is ample evidence of—that convinces the Court beyond a reasonable doubt that [defendant] shared the intent of the shooter to kill. And in fact, as I said, they had argued over who is going to get to do the killing. Under these circumstances, the Court does find that the People have satisfied their burden, and for that reason, the petition is denied."

## II.  DISCUSSION

Defendant contends the court prejudicially erred in denying his petition without taking a waiver of his presence at the hearing. The People respond that defendant had no right to be present at the hearing, and that, even if the court erred, any error was harmless. We reverse and remand the matter with directions.

A defendant has "a constitutional right to be present at his section [1172.6] evidentiary hearing . . . ." (*People v. Basler* (2022) 80 Cal.App.5th 46, 51 (*Basler*).) A defendant must either be present or competently waive his presence at the evidentiary hearing; a competent waiver requires "a knowing, intelligent[,] and voluntary waiver of his presence." (*Id*. at p. 51.) Whether a violation of a defendant's right to be personally present at the evidentiary hearing is prejudicial is determined by asking "whether his absence was harmless beyond a reasonable doubt. [Citations.]" (*Id*. at p. 59.)

6

Here, like in *Basler*, defense counsel did not indicate that he had discussed the evidentiary hearing with defendant or that defendant knew he had a right to be present. (*Basler*, *supra*, 80 Cal.App.5th at p. 59.)  In fact, unlike *Basler*, no mention was made about defendant's presence or lack thereof.

"Nothing in the record suggests [defendant] expressed any desire to waive his right to be present, much less that he knowingly, intelligently[,] and voluntarily did so." (*Basler*, *supra*, 80 Cal.App.5th at p. 59.)  Had defendant known he had a right to be present and even to testify, he may have done so.  (*Ibid.*)

"The question may well turn on disputed issues of fact 'about which [defendant]— as a participant in the events in question—may well have had something to say.' [Citation]."  (*Basler*, *supra*, 80 Cal.App.5th at p. 59.)  The " 'trial court may, or may not, have chosen to believe what [defendant] might have said, if he said anything, but we cannot conclude beyond a reasonable doubt that his presence at the hearing would not have affected the outcome.'  [Citations]."  (*Id.* at pp. 59-60.)

"[W]e decline to conclude that [defendant's] silence in his appellate briefing on the evidence he may have presented at the hearing establishes beyond a reasonable doubt that his presence would not have led to a different outcome.  Apart from presenting evidence, he may have given input to his counsel on the People's presentation and arguments, resulting in his counsel drawing different inferences from the [ ] evidence or doing more than submitting on the papers.  In any event, we agree [defendant] is entitled to hear the People's evidence and argument on the point, then decide whether to testify

7

and/or present additional or new mitigating evidence on his behalf." (*Basler, supra*, 80 Cal.App.5th at p. 60.)

## III.  DISPOSITION

The order denying defendant's petition is reversed.  The matter is remanded with directions to hold a new evidentiary hearing where defendant "will either be present or provide a knowing, intelligent[,] and voluntary written waiver of his presence." (*Basler, supra*, 80 Cal.App.5th at p. 62.)  We express no opinion on whether defendant is entitled to relief following the hearing.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER
                                                                                    J.

We concur:


RAMIREZ
             P. J.


MILLER
             J.